UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM HENRY-HENSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:12CV1773 HEA |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's request for judicial review under 28 U.S.C. § 405(g) of the final decision of Defendant denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* For the reasons set forth below, the Court affirms the Commissioner's denial of Plaintiff's application.

## Facts and Background

Plaintiff was 46 years old at the time of the hearing. He completed high school. Plaintiff lives with his wife and infant granddaughter. The ALJ found Plaintiff had the impairments of hepatitis B, migraine headaches, asthma,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

depression, anxiety, anemia, pursuant to 20 CFR 1520(c). Plaintiff has worked as a security gatekeeper and cashier. Plaintiff was in the Navy from May, 1984 through July, 1997. He received an Honorable Medical discharge. Plaintiff testified that his job as a security gatekeeper was stress-free. However, he was attacked by a coworker on the job in November, 2007, and thereafter began to feel paranoid about another attack. Plaintiff receives 50 percent disability from the VA.

Plaintiff was the caretaker for his mother and his wife's elderly uncle, until he died. He is able to drive, but has some difficulty driving alone. He shops with his wife. During the day, Plaintiff testified that he has to take naps.

A vocational expert also testified. In response to the ALJ's hypothetical question, the VE testified that Plaintiff could perform his past relevant work as a security gatekeeper, as Plaintiff performed it, in a sedentary manner.

Plaintiff's application for social security under Titles II, 42 U.S.C. §§ 401, *et seq.*, was denied on March 4, 2010. A video hearing was conducted on April 28, 2011. On May 27, 2011, the ALJ issued an unfavorable decision. On August 28, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## Standard For Determining Disability

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611. At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which

significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a) (4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a) (1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.*. At Step Five, the ALJ considers the

claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir.2012).

## ALJ's Decision

Applying the foregoing five-step analysis, the ALJ in this case determined at Step One that Plaintiff had not engaged in gainful activity since August 15, 2008, the alleged onset date. At Step Two, the ALJ found that Plaintiff had the following severe impairments: hepatitis B, migraine headaches, asthma, depression, anxiety, anemia. At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or equaled in severity of any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 and 416.929.

Prior to Step Four, the ALJ found that Plaintiff had the residual functional

capacity to perform light work as defined in 20 CFR 404.1567(b), with the exceptions that he may lift only 10 pounds. Plaintiff must be allowed to elevate his leg at his own option. Further, the ALJ determined that Plaintiff is slightly limited, corresponding to no mor than 20 percent of the day, in his ability to complete a normal workday without interruption from psychologically based symptoms.

At Step Four, the ALJ determined that Plaintiff is able to perform his past relevant work as a security gatekeeper, as he performed it, therefore, the ALJ was not required to proceed to Step Five.

## Standard For Judicial Review

The Court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir.2008)). "Substantial evidence is 'less than preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir.2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir.2009)). In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that

decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir.2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir.2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005)). The Court should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir.2006).

## Discussion

In his appeal of the Commissioner's decision, Plaintiff makes the following arguments: (1) the ALJ failed to pose a proper hypothetical question to the vocational expert, (VE). (2) the ALJ failed to properly consider opinion testimony. (3) the ALJ failed to properly evaluate credibility and RFC.

**Hypothetical Question**

Plaintiff argues that the hypothetical question posed to the VE was different

than the ALJ"s RFC reflects.  Specifically, the ALJ stated that Plaintiff would have "slight interference with his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms" amounting to "*less than*" 20 percent of the day. (Emphasis added).  Plaintiff argues that the RFC which includes the term "no more than" 20 percent of the day is in conflict.  Plaintiff is arguing semantics.  As Defendant coherently argues, less than 20 percent and no more than 20 percent is a difference of quite possibly one one-hundredths of a percentage point (19.999 vs. 20).  Clearly, the terminology chosen by the ALJ could have been the same for absolute clarification, however, the impact of the percentage assessment remains the same.  Plaintiff points to no authority to overrule the ALJ's decision based on the choice of words used to describe Plaintiff's limitations.

**Medical Opinion Evidence**

Plaintiff argues that the ALJ failed to assess the opinions of several of his examining doctors and nurses.   With respect to Dr. Dalton, Plaintiff did not see Dr. Dalton during the relevant period.  Plaintiff was seen by Dr. Dalton one time, July 21, 2008, which was before Plaintiff's alleged onset date.

Furthermore, Dr. Dalton's assessment of Plaintiff was contrary to the medical testing in the record.  Plaintiff's global assessment functioning (GAF)

scores were as high as 75, which suggests only fairly mild symptoms. Further tests establish that Plaintiff had good concentration and that he was only mildly limited in persistence and completing tasks.

Regarding Dr. Brenner, the ALJ specifically detailed her reasons for disagreeing with Dr. Brenner's determination that Plaintiff would not be able to work because of his migraine headaches. The single examination by Dr. Brenner does not qualify him as a treating physician. *See Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004). Moreover, Dr. Brenner's opinion is largely based on Plaintiff's subjective comments rather than objective medical signs and clinical symptoms. Significantly, Dr. Brenner was of the opinion that Imitrex would help resolve and relieve Plaintiff's headaches. Indeed, as the ALJ noted, the Imitrex did in fact help Plaintiff and it was reported that Plaintiff had "good control" of the headaches with the migraine medication, Imitrex.

Plaintiff argues that the ALJ should have recontacted Dr. Brenner if she found the opinion to be "outdated, or not particularly relevant at the time of the hearing decision." As Defendant correctly explains, the regulations, which in the past required an ALJ to recontact a treating medical source in certain circumstances (20 C.F.R. § 404.1512, § 416.912) were modified in 2012. *See* 77 F.R. 10656. The new sections allow SSA to determine the best way to resolve any

inconsistency or insufficiency, and also explain that the ALJ may recontact the medical source, but is not required to do so. If the evidence is insufficient or inconsistent, the ALJ may need to take additional actions to develop the record if she is unable to determine whether an individual is disabled based on the evidence at hand. 20 C.F.R. § 404.1520b (2012). Deciding to reject a physician's opinion does not trigger a need to attempt to recontact the doctor. *See Vossen v. Apfel*, 612 F.3d 1011, 1016 (8th Cir. 2010) (discussing provisions requiring ALJ to recontact doctors; only necessary if a crucial issue remains undeveloped).

    Dr. Peaco, a consultative doctor who examined Plaintiff in order to give more information on Plaintiff's case does not necessarily support Plaintiff's claim. Dr. Peaco doubted Plaintiff's Post-Traumatic Stress Disorder claim. The suggestion by Dr. Peaco that Plaintiff had a severe impairment in social functioning is not supported by the record. Plaintiff was able to care for his mother and elderly uncle. Plaintiff denied symptoms of anxiety or panic, and his anxiety medications were prescribed on an "as needed" basis rather than on a regular, prophylactic basis. Indeed, Plaintiff allowed the prescription to run out.

*Samons v. Apfel*, 497 F.3d 813, 819 (8th Cir. 2007) ("Once an ALJ concludes, based on sufficient evidence, that the treating doctor's opinion is inherently contradictory or unreliable, he or she is not generally required to seek more information from that doctor." (internal quotes omitted)) . In this particular case, Dr. Brenner's prediction that Plaintiff would improve with medication, together with subsequent treatment records documenting improvement, was sufficient for the ALJ to reach a conclusion about Dr. Brenner's earlier opinion without recontacting the doctor.

Plaintiff also argues the ALJ erred because she rejected the opinions of two nurses, Ms. Hanson and Ms. Kaiser. However, the ALJ clearly pointed out her determination was based on the inconsistencies in the nurses' opinions and the medical records before the ALJ.

**RFC, Medical Evidence and Credibility**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue,* 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR)

96–8p. An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, including: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. *See Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984); 20 C.F.R. § 404.1529; SSR 96–7p.

Here, the ALJ considered Plaintiffs impairments and did determine that Plaintiff could perform his past work as a security gatekeeper. The ALJ determined Plaintiff's RFC based upon all of the relevant evidence, including medical records, observations of treating physicians, and his description of his limitations. As required by *McCoy v. Astrue*, 648 F.3d 605 (8th Cir. 2011); *Pearsall v. Massanari*, 274 F.3d 1211 (8th Cir. 2001); and *Anderson v. Shalala*, 51 F.3d. 777 (8th Cir. 1995), the ALJ articulated the basis for the weight given the evidence of the record and concluded Plaintiff had the RFC to perform a limited range of work. In so finding, the ALJ considered the entire record including Plaintiff's complaints. He properly concluded there were inconsistencies in her allegations in relation to the record as whole.

Plaintiff argues that the ALJ unfairly considered his daily activities. The

record, however belies this argument. Plaintiff's own testimony establishes that he was able to care for his elderly relatives and baby granddaughter at times.

Plaintiff's medical records establish that his medications did not cause significant side effects. Indeed, he usually denied any side effects from medication.

A claimant's subjective complaints may not be disregarded solely because the objective medical evidence does not fully support them. The absence of objective medical evidence is just one factor to be considered in evaluating the claimant's credibility and complaints. The ALJ must fully consider all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

> (1) the claimant's daily activities;
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
> (3) any precipitating or aggravating factors;
> (4) the dosage, effectiveness, and side effects of any medication; and
> (5) the claimant's functional restrictions.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005). "It is not enough that the

record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence." *Id*. The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ need only acknowledge and consider those factors. *Id*. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988).

The Court finds that the ALJ's credibility assessment is supported by substantial evidence in the record as a whole. The ALJ did consider Plaintiff's work history and the manner in which he performed his past relevant work. In considering Plaintiff's past work, the ALJ added limitations to the type and manner in which Plaintiff could perform his past relevant work.

As Defendant correctly argues, the ALJ did specifically mention Plaintiff's VA disability rating. Moreover, the ALJ was not required to make her determination based on another agency's determination. While she was not able to ignore the VA rating, she was not required to make her determination based on it.

"Because the ALJ [is] in a better position to evaluate credibility, [the Court] defers to [her] credibility determinations as long as they [are] supported by good reasons and substantial evidence." *Cox v. Barnhart*, 471 F.3d 902, 907 (8th

Cir.2006).

Here, the ALJ cited the *Polaski* factors in her decision . To the extent the ALJ discredited or discounted Plaintiff's assertion that his pain was disabling, the Court finds the ALJ provided good reasons supported by substantial evidence. The ALJ noted Plaintiff was not unduly restricted in his daily activities, which included the ability to take care of elderly and young family members, use a computer, drive, and shop for groceries with his wife. The ALJ also noted that Plaintiff was helped with Imitrex for migraine pain relief. The Court finds the ALJ did not err in discounting the most severe subjective complaints of pain. See *Perks*, 687 F.3d at 1093 (affirming ALJ's decision to discount claimant's reports of disabling back pain where claimant's normal activities included "meal preparation, mowing his yard on a riding mower, shopping for food, and maintaining the family's finances"). *McDade v. As true*, 720 F.3d 994 (8th Cir. 2012).

The ALJ's findings were clearly based upon the record as a whole. The ALJ summarized Plaintiff's testimony regarding his limitations, the treatment notes regarding his impairments, the medical opinions in the record, and the ALJ's specific credibility findings. The ALJ applied the proper standard to the facts before her and her determination of Plaintiff's RFC and his ability to perform his past relevant work is supported by the record as a whole.

## **Conclusion**

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. The decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is affirmed.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 18th day of February , 2014.

_____
   HENRY EDWARD AUTREY
  UNITED STATES DISTRICT JUDGE